UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

DEREK JAMES LAUBER,

          Debtor.

Case No. 21-02636-swd
Hon. Scott W. Dales
Chapter 13

_____/

<u>MEMORANDUM OF DECISION AND ORDER</u>

PRESENT:    HONORABLE SCOTT W. DALES
                  Chief United States Bankruptcy Judge

In a chapter 13 case, a working payroll order often means the difference between a debtor's success or failure under the plan.  Chapter 13 debtor Derek James Lauber (the "Debtor") thought he had a working payroll order (ECF No. 50, the "Payroll Order") because his paystubs reflected the employer's weekly deduction of his plan payment from his wages.  Unfortunately, the employer, ACR Performance ("ACR"), at some point ceased remitting the funds to the chapter 13 trustee, while still withholding them from the Debtor's pay.

The employer's defalcation triggered the Debtor's default in meeting his obligations under his plan and to the holder of his home mortgage.  Facing an imminent order authorizing the lender to foreclose, the Debtor now invokes the court's contempt power to assist him in curing his defaults -- defaults clearly traceable to the employer's flouting of the Payroll Order.

On April 23, 2024, the court held a hearing on the Debtor's Motion for Order to Show Cause Why Employer ACR Performance Should Not Be Held in Civil Contempt for Failure to Comply with Court Order (ECF No. 62, the "Contempt Motion").

In its initial response to the Contempt Motion, the court entered its Order to Show Cause dated April 12, 2024 (ECF No. 64, the "Show Cause Order"), to assist in framing the issues and giving adequate notice to ACR.  The Debtor properly served the Contempt Motion and the Show

Cause Order on ACR and its supposed principal, Tony Dexterhouse, by overnight mail on April 15, 2024, according to the related Certificate of Service (ECF No. 65). At the hearing, Debtor's counsel confirmed, based on postal service tracking data, that the postal service timely delivered the overnight package to ACR and Mr. Dexterhouse (the "Alleged Contemnors").

To help the Debtor fund his chapter 13 plan, and at the request of chapter 13 trustee Brett N. Rodgers (the "Trustee"), the court entered the Payroll Order last July. The Payroll Order directed ACR to withhold the sum of $309.24 from the Debtor's wages each week and remit the withholdings to the Trustee. ACR consistently withheld the plan payments, but inconsistently remitted them to the Trustee.

More specifically, the Debtor alleges, based on his pay advices, that ACR withheld $8,367.08 but remitted only $5,257.08 to the Trustee, leaving $3,110.00 in estate property -- the Debtor's wages -- that ACR withheld but has not remitted, in violation of the Payroll Order. The Debtor further alleges that ACR's failure or refusal to remit the funds has resulted in a default under his confirmed plan and has put his home at risk of foreclosure, given a stipulation he entered into with his home lender. The conduct alleged, if established as willful, may also support relief under 11 U.S.C. § 362(k), entitling the Debtor to damages, including attorneys' fees.

The court, therefore, ordered the Alleged Contemnors to show cause why the court should not (1) hold them in contempt of the Payroll Order; (2) enter judgment against them in the amount of $3,110.00; (3) impose a *per diem* sanction against the Alleged Contemnors for every day after the April 23, 2024 hearing that the $3,110.00 remains unpaid; (4) award damages, both compensatory and punitive, including attorneys' fees, under § 362(k) on account of any willful violation of the automatic stay; and (5) grant such other relief in the nature of a civil contempt

sanction to coerce compliance with the Payroll Order, or compensate the Debtor for the Alleged Contemnors' noncompliance.

On April 23, 2024, the Debtor, the Trustee, and the United States Trustee appeared at the Bankruptcy Courthouse in Grand Rapids through counsel.  Neither ACR nor Tony Dexterhouse responded to the Show Cause Order in writing and neither attended the hearing.

At the hearing, the Debtor's counsel stood on her motion, supplemented by four exhibits – which the court admitted into evidence without objection, including a summary of the payments that ACR failed to remit to the Trustee (Exhibit C, the "Summary") and an email exchange between Mr. Dexterhouse and Debtor's counsel in which Mr. Dexterhouse admits his knowledge of the missing funds.  (Exhibit D, the "Emails").

Upon review of the Debtor's motion and the exhibits, the court finds that ACR has failed to comply with the court's Payroll Order.  Because ACR has not responded to the Show Cause Order or offered any defense to the Contempt Motion, the court finds no "fair ground of doubt" as to whether ignoring the court's order was lawful.  *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019).  The fact that ACR partially complied with the Payroll Order (as set forth in several exhibits) establishes its knowledge of the obligations under the Payroll Order and the pendency of the Debtor's bankruptcy case.  The Emails similarly acknowledge ACR's obligation to remit funds to the Trustee and acknowledge the shortfalls, albeit not in a specific amount.  The uncontested Summary, bolstered by the Debtor's pay advices for the relevant period, establish that ACR withheld $3,110.00 of the Debtor's wages but did not remit this amount to the Trustee.  The Payroll Order clearly put ACR on notice of its obligation of compliance, and despite its principal's knowledge of the order and the deficit, ACR continues to hold $3,110.00 of estate property the

Debtor has relied on to fund his plan and save his home from foreclosure. The court finds ACR in contempt.[1]

The Bankruptcy Court's contempt powers are limited to civil remedies, which include (1) compelling or coercing compliance with an order, and (2) compensating persons who suffer injury from the contemnor's non-compliance. *See In re Burkman Supply, Inc.*, 217 B.R. 223, 225 (W.D. Mich. 1998). To compensate the Debtor for the injury he suffered from ACR's contempt, the court will enter a judgment against ACR in the amount of $3,110.00, in favor of the Debtor who, under the confirmed plan (ECF Nos. 2 and 26) remains in possession of the estate property. *See* 11 U.S.C. § 1306(a)(2) (post-petition earnings in chapter 13 case included within the property of the estate); *id.* § 1306(b) (chapter 13 debtor generally remains in possession of estate property).

The court makes three procedural observations about the money judgment it intends to enter in this matter. First, this proceeding is in the nature of a contempt proceeding, which under Bankruptcy Rule 9020 is a contested matter under Bankruptcy Rule 9014. Second, Bankruptcy Rule 7062 does not apply in a contested matter, so the court's contempt sanction (in the form of a money judgment against ACR) is not stayed under Civil Rule 62. Third, although Civil Rule 54(b) applies to this contested matter, the Debtor's urgent need to recover the wages that ACR wrongfully withheld so that he can address his plan and mortgage defaults, persuades the court that there is "no just reason" for delaying entry of the money judgment while counsel takes steps to prove her entitlement to attorneys' fees, described below. Fed. R. Civ. P. 54(b). The money judgment to be entered promptly after entry of this Memorandum of Decision and Order will be final and immediately enforceable. This means that, upon entry of the money judgment, the Debtor

---

[1] The court has refrained from holding Mr. Dexterhouse in contempt of the Payroll Order because that order fashioned obligations on ACR, not its principal, although the Emails show that he acted in concert with ACR. If ACR's contempt continues, the court may revisit Mr. Dexterhouse's culpability, if any, for the shortfall.

(if so advised) may immediately prepare for the Clerk's signature a writ of garnishment in accordance with Civil Rule 69 and forum state practice and serve the writ on ACR and its depository institutions, including the institution from which ACR paid the Debtor during his employment.  This seems like a speedy and sensible way to enforce the money judgment and compensate the Debtor for ACR's contempt of the Payroll Order.  Fed. R. Bankr. P. 1001.

This leaves the Debtor's request for attorneys' fees, either as part of the relief for ACR's contempt of the Payroll Order or separately under 11 U.S.C. § 362(k).  The court is mindful that the money ACR failed to remit to the Trustee is property of the estate under 11 U.S.C. § 1306(a)(2).  As the court suggested in the Show Cause Order and during the hearing, by unlawfully retaining funds owed to the Debtor through his post-petition earnings, ACR violated the automatic stay.  *See* Exhibit C; *see also* 11 U.S.C. § 362(a)(3) (enjoining acts to obtain possession or control of estate property) and § 1306(a)(2) (including post-petition earnings within the property of the chapter 13 estate).  The Emails further demonstrate that ACR was aware that it had failed to fully account for the earnings it withheld from the Debtor's paychecks and was aware of the Debtor's pending bankruptcy case, yet did not remit the funds.  (Exhibit D).  The court finds these facts sufficient to prove that ACR violated the automatic stay, and that its violation was willful.  The violation, moreover, injured the Debtor by throwing him into default in meeting his plan payment obligations and his obligations to his mortgage lender, prompting the lender to seek relief from the automatic stay to pursue foreclosure.  The defaults that ACR triggered required the Debtor to turn to counsel for help, and counsel took repeated and costly steps to assist him.  Under the circumstances, the court will award reasonable attorneys' fees to the Debtor for the costs he incurred as a consequence of ACR's contempt of the Payroll Order and its violation of the automatic stay (by retaining estate property in the form of wages).  11 U.S.C. § 362(k).

Although ACR is liable for the Debtor's attorneys' fees, Debtor's counsel was not prepared at the hearing to give a detailed account of the fees incurred as a result of the contempt and concomitant stay violation -- indeed the fees continued to accrue during the hearing.  Therefore, the Debtor's counsel may prepare and file a motion within 14 days of the entry of this Memorandum of Decision and Order detailing her claim for attorneys' fees, which the court will address under Civil Rule 54.  Fed. R. Civ. P. 54(d)(2).  Counsel shall serve the motion on ACR, who will have the opportunity to respond or object to the motion, but only as to the amount of the requested award, not its obligation to compensate the Debtor for the fees he reasonably incurred as a consequence of the contempt and stay violation.

The effects of the employer's withholding-but-not-remitting the Debtor's wages has provoked the court's scrutiny and spirited condemnation.  Without any response to the Show Cause Order, the record now also excites inferences of the employer's criminality.  By retaining property of the estate (due in the first instance to the Debtor), ACR or its principal may have offended state and federal penal codes, wage and labor laws, or other statutory proscriptions, not simply the Payroll Order and the Bankruptcy Code's turnover requirements.  11 U.S.C. § 542.

While the court further considers whether it has a duty to refer the matter to the United States Attorney under 18 U.S.C. § 3057 or otherwise, ACR and Mr. Dexterhouse would be well-advised simply to rectify the violations of the Payroll Order -- sooner rather than later.  If they do not, the court stands ready to enforce its orders as necessary upon further application by the Debtor, the Trustee, or the United States Trustee.

One final observation for the Debtor's benefit.  The court has so far held the Debtor's mortgage lender at bay, postponing enforcement of the Order Modifying the Automatic Stay (ECF No. 52), which it entered on the Debtor's stipulation.  Just as the court intends to enforce the

Payroll Order, it will eventually enforce the Order Modifying the Automatic Stay, albeit with considerably less enthusiasm.  For the sake of all interested parties, the Debtor should proceed with dispatch in enforcing the judgment the court intends to enter against ACR today.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1. The Clerk shall enter a separate judgment against ACR Performance in the amount of $3,110.00, which judgment shall be final and immediately enforceable, and shall bear interest at the federal rate prescribed in 28 U.S.C. § 1961;

2. The court will award reasonable attorneys' fees to the Debtor resulting from ACR's contempt;

3. The Debtor will prepare, file, and serve a motion under Civil Rule 54(d)(2)(A) to recover fees incurred as a result of ACR's contempt and stay violations, including the fees incurred in filing and prosecuting the Contempt Motion and addressing the plan defaults and defaults under the stipulation with the home lender; and

4. ACR will have a limited opportunity to respond or object to the amount requested in the future fee motion.

IT IS FURTHER ORDERED that the court will retain or dispose of the exhibits submitted during the hearing in accordance with its posted procedures, available on the court's website at https://www.miwb.uscourts.gov/content/chief-judge-scott-w-dales.

IT IS FURTHER ORDERED that pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 the Clerk shall serve a copy of this Memorandum of Decision and Order, and the judgment (to be prepared) on the Debtor, Harlee L. Nowland, Esq., Elizabeth Clark, Esq., Michael V.

Maggio, Esq., ACR Performance and its principal, Tony Dexterhouse (by First Class U.S. Mail), and all entities requesting notice of these bankruptcy proceedings.

END OF ORDER

**IT IS SO ORDERED.**

**Dated April 24, 2024**



Scott W. Dales
United States Bankruptcy Judge